UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SEATREPID LOUISIANA, LLC                 *       CIVIL ACTION

versus                                                      *      NO. 09-3174

RICHARD PHILLIPS MARINE, INC.       *      SECTION "F"

## ORDER AND REASONS

Before the Court is the defendant's motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(3). For the reasons that follow, the motion is GRANTED.

## **Background**

This suit arises out of an Oregon corporation's (Richard Phillip Marine, Inc.'s) failure to pay a Louisiana limited liability company (SeaTrepid Louisiana, LLC) for robotic operated vehicle (ROV) services that SeaTrepid performed as part of an underwater construction project in the Puget Sound near Redondo, Washington.

RPM, a corporation organized under the laws of the State of Oregon with its principal place of business in Boring, Clackamas County, Oregon, is a diving and marine company that works on underwater construction projects. RPM is not registered to do business in Louisiana, does not have an agent for service of process in Louisiana, does not have any offices or employees in Louisiana, does not have any bank accounts in Louisiana, and does

1

not own any property in Louisiana.[1]

In late January 2008, Richard Phillips, RPM's president, traveled from Oregon to New Orleans (as he does annually) to attend the Underwater Intervention conference; he and his wife met with officials of SeaTrepid at SeaTrepid's trade show booth. (SeaTrepid, a Louisiana limited liability company domiciled in Robert, Louisiana, is a terrestrial and underwater robotics service company that specializes in providing ROV services.) Phillips discussed RPM's upcoming project in the Puget Sound near the City of Redondo, Washington, which involved the installation of an underwater sewer outfall pipeline on the floor of the Puget Sound. He needed a company that could perform ROV services to work on the project, and asked whether SeaTrepid would be interested in providing ROV services for the Redondo Project.[2]

---

[1] The record suggests that RPM has never worked on a project in Louisiana, does not manufacture, sell, or distribute any products in Louisiana, does not offer any services in Louisiana, and has not engaged in any advertising campaign targeted in Louisiana. RPM's contacts with the state of Louisiana, beyond the contacts attendant to its contract with SeaTrepid Louisiana, LLC, set forth infra, include: Richard Phillips, RPM's president, attends "Underwater Intervention", the combined conference of the Association of Diving Contractors International and The Marine Technology Society's ROV Committee that is held for three days in New Orleans on an annual basis; also, RPM orders supplies over the internet approximately twice a year from the website of Divers Supply, Inc., a supply company located in Gretna, Louisiana -- RPM estimates that its purchases from Divers Supply constitute less than 1% of RPM's total purchases each year.

[2] Mr. Phillips' declaration states the following as to what led him to contact SeaTrepid for work on the Redondo Project:

On February 12, 2008 Phillips telephoned Toni LaLonde, a SeaTrepid representative, and again asked whether SeaTrepid would be interested in providing ROV services on the Redondo Project. Mr. Phillips sent LaLonde an email that same day confirming their telephone conference.

On February 21, Phillips emailed LaLonde, and requested that SeaTrepid provide an estimate for ROV work on the Redondo Project. Following up on this request, SeaTrepid's president, Bob Christ, emailed an initial pricing outline for the Redondo Project.

On September 2, 2008 Richard Phillips emailed Bob Christ and stated that RPM was "close to needing ROV services," and asked whether SeaTrepid would still be able to work on the Redondo Project. Later that day, Bob Christ emailed Richard Phillips confirming that SeaTrepid wanted to provide the ROV services for the Redondo Project.

Because SeaTrepid had an ROV crew working on the Brightwater

---

In September 2008 RPM was working on the Redondo Project. Cosmopolitan Engineering Group, the engineers for the Redondo Project, required the use of underwater robotics, including ROVs, to assist in installing the pipeline. Cosmopolitan Engineering advised Richard Phillips that it was working on another wastewater treatment project in the Puget Sound near Seattle, Washington, known as the Brightwater Project. Cosmopolitan Engineering told Mr. Phillips that the Brightwater Project also required the use of ROV services, and that there was a company providing ROV services on the Brightwater Project at that time.
     Mr. Phillips contacted TerraSound Limited, a mapping company located in Alaska, seeking recommendations for a company to provide ROV services on the Redondo Project; TerraSound recommended SeaTrepid Louisiana, LLC and identified it as the company providing ROV services on the Brightwater Project.

Project in the Puget Sound near Seattle, it agreed to send the lead ROV pilot on that project to Redondo to meet with Phillips and review the work to be performed on the Redondo Project. Accordingly, Phillips called Alex Kaplan, the SeaTrepid ROV pilot working on the Brightwater Project, and scheduled the meeting at the Redondo jobsite.

On September 6, 2008, Mr. Phillips met with Alex Kaplan at the jobsite, and Mr. Kaplan looked at RPM's vessels, the project, the plans, and the pipe that needed to be submerged and installed on the floor of the Puget Sound. Mr. Kaplan said SeaTrepid could do the job.

After the meeting in Washington state, between September 6 and September 18, RPM negotiated with SeaTrepid by email: SeaTrepid agreed to provide RPM certain equipment and personnel in connection with the Redondo Project, and gave RPM a quote for the ROV services it was to perform. The terms of this agreement were memorialized in a proposal sent by SeaTrepid to RPM, dated September 18, 2008; it was accepted by Gina Phillips of RPM that same day. (On September 19, SeaTrepid sent a revised quote to RPM as a result of the need for additional equipment and personnel required for the Redondo Project.)

SeaTrepid provided a ROV crew to work on the Redondo Project[3]

---

[3] The crew did not include the ROV pilot, Alex Kaplan, who inspected the project before RPM and SeaTrepid negotiated the contract. The record suggests SeaTrepid's crew for the Redondo

4

and all of the ROV services for the Redondo Project were performed in Washington state between September 22 and October 4, 2008.[4]

On October 7, 2008, three days after its work was complete, SeaTrepid sent RPM an invoice detailing the amounts owed by RPM for the equipment and labor provided by SeaTrepid on the Redondo Project. RPM has failed to make any payment toward the invoice, which totals $81,729.79.[5] On February 16, 2009 SeaTrepid sued RPM in Louisiana state court asserting that the $81,729.79 RPM owes it constitutes an open account under La.R.S. 9:2781.

On March 30, 2009 RPM removed the lawsuit to this Court, invoking the Court's diversity jurisdiction. RPM now seeks dismissal of SeaTrepid's suit on the grounds that this Court lacks personal jurisdiction over RPM, and that Louisiana is an improper venue.

I.

When a nonresident defendant, like RPM, moves to dismiss for

---

Project was based out of California.

[4] Bob Christ states in his Declaration that, at some unspecified time, he recommended to RPM that it consider hiring Northwest Underwater Construction (a ROV operator in the northwest) to perform ROV services on the Redondo Project because "NUC could perform the ROV services on the Redondo Project at a much lower cost than SeaTrepid." According to Bob Christ, RPM declined to hire NUC because NUC is a competitor of RPM.

[5] On January 15, 2009 RPM offered, by letter, to pay $14,962.05 to SeaTrepid as payment in full on the invoice. On January 30, 2009 (through counsel), SeaTrepid formally demanded payment in full.

lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of this Court bears the burden of establishing it. See Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006), cert. denied, 548 U.S. 904, 126 S.Ct. 2968, 165 L.Ed.2d 951 (2006).

RPM, an Oregon corporation, challenges the exercise of personal jurisdiction over it in this Louisiana forum. SeaTrepid, therefore, faces the prima facie burden of showing that RPM has contacts with Louisiana that are sufficient for the Court to exercise jurisdiction over it. See id. All disputed jurisdictional facts must be resolved in favor of jurisdiction. Id.[6] The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery. Jobe v. ATR Marketing, Inc., 87 F.3d 751, 752 (5th Cir. 1996)

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of Due Process. See Seiferth v.

---

[6] "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." Latshaw v. Jonhston, 167 F.3d 208, 211 (5th Cir. 1999).

6

Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006).

Louisiana's long-arm statute, La.R.S. 13:3201(B), provides that a Louisiana court "may exercise personal jurisdiction over a nonresident on any basis consistent with the...the Constitution of the United States." Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over RPM would offend due process. See Luv N' Care, 438 F.3d at 469; see also Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

The Due Process Clause limits the Court's power to assert personal jurisdiction over a nonresident defendant. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1994). That is, a nonresident defendant must have meaningful "contacts, ties, or relations" with the forum state. See Luv N' Care, 438 F.3d at 469 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). Indeed, the constitutional touchstone for the exercise of personal jurisdiction is whether the defendant purposefully established minimum contacts with the forum state. Asahi Metal Indus. Co., Ltd v. Super. Ct. of Calif., Solano Co., 480 U.S. 102, 108-09 (1987).

The minimum contacts test takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court seeks to exercise general or

specific jurisdiction over the defendant. Regardless of whether the lawsuit is related to the defendant's contacts with the forum, courts may exercise general jurisdiction over any lawsuit brought against a defendant that has "continuous and systematic general...contacts" with the forum state. See Seiferth, 472 F.3d at 271 (citing Helicopteros, 466 U.S. at 413-14). "If", on the other hand, "a defendant has relatively few contacts, a court may still exercise specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" Id. General jurisdiction focuses on incidents of continuous activity within the disputed forum; specific jurisdiction is more cramped by virtue of a very limited nexus with the forum. When a defendant has a strong relationship to the litigated claim and the claim has a strong relationship with the forum, the Court will have specific jurisdiction.

A. Specific Jurisdiction

The Court may exercise specific jurisdiction over a defendant who has "minimum contacts" with the forum state, if maintaining the suit would not "offend traditional notions of fair play and substantial justice." See Luv N' Care, 438 F.3d at 469 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). The Fifth Circuit has articulated a three-step personal jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state ... whether [he] purposely directed [his] activities toward the forum state or purposely

>           availed [himself] of the privileges of
>           conducting activities there;
>
>     (2)   whether the plaintiff's cause of action
>           arises out of or results from the
>           defendant's forum-related contacts; and
>
>     (3)   whether the exercise of personal
>           jurisdiction is fair and reasonable.

Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) and Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374 (5th Cir. 2002)). If the plaintiff establishes (1) and (2), then the burden shifts to the defendant, who must show (3), that it would be unfair or unreasonable to exercise jurisdiction. Id.

The specific jurisdiction inquiry instructs that the Court focus on the nexus between RPM, its conduct in Louisiana, and SeaTrepid's claim. If the claim arises out of the defendant's minimum contacts with the forum, RPM may nevertheless show that it would be unfair for the Court to exercise jurisdiction. RPM contends that it has not had the necessary contacts with Louisiana to justify exercise of personal jurisdiction. The Court agrees.

RPM does not seriously dispute, at this time, that SeaTrepid's claim appears to arise out of the defendant's forum-related contact; SeaTrepid points to the contact that RPM had with Louisiana concerning its contract (the subject of this suit) with SeaTrepid – including RPM's introductory visit with SeaTrepid at the conference in Louisiana, the negotiations that followed by telephone and email communications (with SeaTrepid in Louisiana and

9

RPM from Washington and Oregon).  While the second prong of the Fifth Circuit's specific jurisdiction test is not seriously contested (generically, the disputed invoice arose from RPM's contract with a Louisiana-based company), the test's first and third prongs are sharply contested.

    1.   Does RPM have the minimum contacts necessary for this Court to exercise jurisdiction?

The first prong of the analysis requires that the plaintiff establish that the defendant purposefully availed itself of the privilege of conducting activities in the forum, thus invoking the benefits and protections of Louisiana's laws. <u>Jones v. Petty-Ray Geophysical</u>, 954 F.2d 1061, 1086 (5th Cir. 1992) <u>quoting</u> <u>Hanson v. Denckla</u>, 357 U.S. 235 (1958) (internal quotation marks omitted). While a single act directed at the forum state can confer personal jurisdiction so long as that single act gives rise to the claim asserted, it is well-settled that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." <u>Holt Oil & Gas Corp. v. Harvey</u>, 801 F.2d 773, 778 (5th Cir. 1986) (citing, among others, <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); <u>Latshaw v. Johnston</u>, 167 F.3d 208, 211 (5th Cir. 1999). With these principles in mind, the Court addresses the parties' dispute about the nature and quality of RPM's contacts with the forum.

(a) The contract between RPM and SeaTrepid was performed outside of Louisiana.

In contract cases, the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a...resident is sufficiently purposeful to satisfy minimum contacts." Jones, 954 F.2d at 1066 (citing Barnstone v. Congregation Am. Echad, 575 F.2d 286, 288 (5th Cir. 1978)); Holt Oil, 801 F.2d at 778; accord St. Martin & Mahoney, APLC v. Diversified Aircraft Holdings, Ltd., 934 F. Supp. 200, 205 (E.D. La. 1996) (Fallon, J.)("[O]ne of the most pivotal considerations in determining whether there has been 'purposeful availment' is where the material performance of the contract was centered.").

In this case, significantly, all of the material performance was outside of Louisiana: The jobsite of the Redondo Project was in the state of Washington; SeaTrepid was obligated to provide equipment and workers to perform its services *in Washington*; RPM's sole obligation was to pay SeaTrepid for its services. The fact that RPM was obligated to mail its payment to Louisiana does not weigh heavily in the calculus, given that the material performance took place in Washington state. See Holt Oil, 801 F.2d at 778.

(b) The process of contract formation does not establish the necessary contacts for specific jurisdiction.

11

To determine if minimum contacts existed, the Court "must look to the prior negotiations, contemplated future consequences of the agreement, and the actual course of dealing between [the contracting parties]." Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 337 (5th Cir. 1999) (citation omitted).

SeaTrepid urges the Court to focus on the facts surrounding formation of its contract with RPM:  RPM initiated contract formation by soliciting SeaTrepid to work on the Redondo Project when visiting SeaTrepid's display booth at a convention in New Orleans, and then the parties exchanged phone calls and emails (RPM from Washington and Oregon and SeaTrepid from New Orleans).

Several other facts, however, inform the Court's analysis of RPM's activities in this case: RPM does not regularly engage in business in Louisiana and there is no evidence in the record that the contract for services with SeaTrepid was anything more than a one-time service agreement. Significantly, nothing in the record shows, and SeaTrepid does not assert, that the parties contemplated some long-term relationship with continuing obligations such that RPM should reasonably anticipate being haled into a Louisiana court. See Stuart v. Spademan, 772 F.2d 1185, 1194 (5th Cir. 1985).

SeaTrepid relies heavily on the fact that RPM "solicited" its services in Louisiana. Conceding that the work was to be performed outside of Louisiana (and indeed that the one meeting during negotiations occurred in Washington state), SeaTrepid maintains

12

that the telephone calls and emails between Richard Phillips and SeaTrepid's President, Bob Christ and other SeaTrepid representatives, for the purpose of contract negotiation and formation, are adequate to establish that RPM purposefully established minimum contacts with this jurisdiction. The Court disagrees.

For SeaTrepid to succeed, it must ignore the clear line of precedent in the Fifth Circuit that instructs that contracting with an entity that happens to reside in Louisiana is not, without more, sufficient to justify the extension of personal jurisdiction over a nonresident. In <u>Jones</u>, the Fifth Circuit considered a case in which part of the contractual negotiations took place by way of telex between France, where the non-resident defendant was located, and Texas, the forum state in question. <u>Jones</u>, 954 F.2d at 1066. The court of appeals held that this negotiation was "insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws." <u>Id.</u> (citing <u>Hydrokinetics, Inc. v. Alaska Mech., Inc.</u>, 700 F.2d 1026, 1029 (5th Cir. 1983)).

Again, in <u>Holt Oil & Gas Corp. v. Harvey</u>, 801 F.2d 773, 778 (5th Cir. 1986), the Fifth Circuit similarly concluded that an exchange of communications between the defendant and the plaintiff in the forum state to develop a contract is insufficient to constitute purposeful availment because such interactions rest on

nothing but the mere fortuity that the plaintiff happened to be a resident of the forum.

And in St. Martin & Mahoney, APLC v. Diversified Aircraft Holdings, Ltd., 934 F. Supp. 200 (E.D. La. 1996), the district court declined to exercise personal jurisdiction even though the defendant had sent a fax to the plaintiff in Louisiana for the purpose of forming a contract to purchase an airplane. The material place of performance was outside of Louisiana, and the court found that the presence of the plaintiff in Louisiana would not be enough to confer personal jurisdiction, even though the suit pertained to the subject matter of the contract because "merely contracting with a resident of the forum is insufficient to subject the nonresident to the forum's jurisdiction." Id. at 204.

In the present case, the only contacts RPM had with SeaTrepid in Louisiana were the initial visit to SeaTrepid's display booth at a New Orleans conference[7] and negotiations by telephone and email, all leading up to the formation of the contract which was concluded by email. Any contact with Louisiana by RPM was tantamount to the "mere fortuity" that SeaTrepid is located in the forum, which is

---

[7] SeaTrepid makes much of RPM's visit to New Orleans. The Court notes that there is no evidence in the record to suggest that RPM sought out SeaTrepid or traveled to New Orleans for the sole purpose of soliciting SeaTrepid's services. In any event, while the visit is relevant to the personal jurisdiction calculus, it is not sufficient in this case to alter the quality and nature of RPM's contact with the state of Louisiana. See Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1029 (5th Cir. 1983).

not enough to hale RPM into Court. In considering the totality of the facts, focusing on the quality and nature of RPM's contact with Louisiana, the Court finds that RPM did not purposefully avail itself of the privilege of conducting activities in the forum such that it invoked the benefits and protections of Louisiana's laws.

    2. It would be unreasonable and unfair to force RPM, an Oregon company, to litigate in Louisiana.

Moreover, under the reasonableness prong (or so-called "fairness factors", which is anchored to constitutional doctrine), the exercise of personal jurisdiction is only reasonable if it does not offend "traditional notions of fair play and substantial justice." Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999). Even if a defendant has minimum contacts with a forum, the Court must consider the burden on the defendant in light of other factors, including:

> [1] the forum state's interest in adjudicating the dispute;
> [2] the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's right to choose the forum;
> [3] the interstate judicial system's interest in obtaining the most effective resolution of controversies; and
> [4] the shared interest of several states in furthering fundamental substantive social policies.

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

The Court has found that RPM does not have sufficient minimum contacts in Louisiana to require it to be haled into court here.

But even if RPM had the requisite contacts with the forum, however, it would seem that "fair play and justice" would counsel against exercising jurisdiction over RPM in Louisiana: RPM is being haled into a court that is located far from its place of business and where it has no minimum contacts. It has been forced to retain local counsel with whom it has no prior professional relationship. If this lawsuit were allowed to proceed in Louisiana, most of the critical witnesses are located in Washington state, where the contract was performed, and where the federal court in the Western District of Washington is the most likely to have subpoena power over the non-party witnesses. Finally, the Western District of Washington is likely the most appropriate forum considering conflicts of laws (RPM makes a strong argument that Washington law applies). This Court finds that adjudicating this dispute in Louisiana would violate the minimum contacts required to fulfill due process and would impede any notion of "fair play and substantial justice." As such, the Court declines to exercise specific jurisdiction over RPM.

 B. General Jurisdiction

 Unlike the specific jurisdiction analysis, which scrutinizes the connections between the defendant, the claim, and the forum, a general jurisdiction inquiry, which is more demanding, is "dispute blind, the sole focus being on whether there are any continuous and systematic contacts between the defendant and the forum." <u>Dickson</u>

16

Marine, Inc. V. Panalina, Inc., 179 F.3d 331, 339 (5th Cir. 1999). Rather than mere "minimum" contacts, "continuous and systematic" contacts must exist between the state and the foreign corporation because "the forum state does not have an interest in the cause of action." Id. The Fifth Circuit has noted that the continuous and systematic test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., 249 F.3d 413, 419 (5th Cir. 2001).

The few contacts between RPM and the state of Louisiana would make an exercise of general jurisdiction offensive to the Due Process Clause. As noted, RPM is an Oregon corporation with its principal place of business in Oregon. It is not licensed to do business in Louisiana and it has no offices, employees, property, bank accounts or other resources in this state. It has never worked on a project in Louisiana. RPM's president travels to Louisiana once each year to attend a conference; RPM purchases supplies, by placing its orders online, from a Louisiana company maybe twice a year. Beyond the one-time service contract with SeaTrepid and RPM's occasional supply purchase from another Louisiana company, RPM has not had any other contracts or subcontracts with companies located in Louisiana. On these facts, no reasonable case can be made that RPM's contacts can reach the much higher level of "continuous and systematic" contacts required for general jurisdiction. See generally Helicopteros Nacionales de

Columbia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (no personal jurisdiction over defendant in Texas, notwithstanding a number of contacts, including purchasing helicopters and parts for seven years, sending pilots to Texas for training, and having personnel visit Texas).

Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.[8]  The plaintiff's case is dismissed without prejudice.

New Orleans, Louisiana, May 14, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[8] Because the Court has determined that it has no personal jurisdiction over the defendant, the Court does not reach the defendant's alternative argument that the case should be dismissed for improper venue.